IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DARRELL J. SMITH, #1812589 | § | |
| VS. | § | CIVIL ACTION NO. 6:16cv1001 |
| BRAD LIVINGSTON, ET AL. | § | |

**MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT**

Plaintiff Darrell Johnathan Smith, (Smith), an inmate formerly confined at the Kegans Unit with the Texas Department of Criminal Justice, proceeding *pro se* and *in forma pauperis*, brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging purported violations of his constitutional rights. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Smith's Allegations and the Response**

Smith filed his complaint in July 2016 concerning an issue that occurred in June 2015 while imprisoned at the Coffield Unit. Specifically, Smith maintained that Officer Sherrod entered his dormitory to perform count, at which point Smith returned back to his cubicle. Once there, he noticed that his hot pot was on fire, so he rushed it to the bathroom to eliminate the fire. Sherrod continued to "count" him while in the bathroom. Subsequently, another inmate informed Smith that Officer Halim had been inside his cubicle "messing around with [his] stuff," and also plugged Smith's hot pot into the outlet without any water in it, causing it to catch fire.

Eventually, Smith attempted to speak to a ranking officer, at which point he remarked to Officer Sherrod that he did not want Officer Halim to return to his dormitory and "if he did that

1

we're going to have problems." He was given a "major" disciplinary case for threatening to harm an officer, at which point Smith explained to another officer that he wanted to attend the hearing and plead not guilty.

Smith alleged that the officer lied by stating that Smith did not want to attend the hearing and failed to defend him. He further noted that he received his disciplinary case in the mail without ever being called to attend the hearing, prompting him to file an I-60 inquiring as to why he was not allowed to attend the hearing. As a result of his disciplinary case, Smith was found guilty and prison officials dropped his line class and imposed commissary and cell restrictions for thirty days.

Furthermore, while difficult to decipher, Smith also alleged that after the incident, his legal materials were "taken" and he was informed that he was not permitted to have writing materials, stamps, and envelopes. Ultimately, Smith maintains that prison officials failed to conduct a thorough disciplinary investigation, follow proper procedures concerning recording the incident, and did not allow him to attend his hearing or listen to the tape. As for Smith's requested relief, he wants "to be reimbursed for time that I served after March1, 2016, and the hardship that it has placed on my family and myself, decided by a jury."

The Attorney General's Office filed a motion to dismiss, (Dkt. #28), arguing that Smith failed to effectuate service of process and highlighting that his claim "amounts to nothing more than a deprivation of property, which is not cognizable."

After a review of the pleadings, the Magistrate Judge issued a Report, (Dkt. #32), recommending that Smith's complaint be dismissed with prejudice as frivolous and for the failure to state a claim upon which relief may be granted. Smith has filed timely objections, (Dkt. #38).

**II. Smith's Objections and Discussion**

In his objection, Smith maintains that the basis of his civil rights complaint was not solely the destruction of his hot pot, but rather "it is about the violation of my due process [rights] in how the state lied, covered up, and failed to do [their] jobs correctly." Furthermore, he highlights how he does not have access to law library.

While it is clear that Smith is upset about his hot pot, to the extent that he also raiases claims concerning (1) the denial of due process with respect to his disciplinary case and hearing, (2) false allegations, (3) retaliation and access to courts through the deprivation of legal writing materials, and (4) a violation of TDCJ rules and policies, the Court will address those claims below.

*A. Due Process and Disciplinary Proceedings*

As mentioned, Smith contends that he received a disciplinary case for his threat against a prison officer. He was found guilty during a hearing and, according to his submitted grievances, received a drop in his line or custodial classification as well as cell and commissary restrictions.

However, his contentions that he was denied due process in connection with his disciplinary case do not support a constitutional claim, which is required in any civil rights lawsuit. *See Allison v. Kyle*, 66 F.3d 71. 73 (5th Cir. 1995) ("[N]either habeas or civil rights relief can be had absent the allegation by the plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."). Absent atypical punishment or significant hardship, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action. *See Sandin v. Conner*, 515 U.S. 472, 484-85 (1995).

Here, neither the punishments Smith received as a result of his disciplinary case implicate constitutional concerns nor the actual disciplinary case that led to those punishments. Placement in administrative segregation, cell and commissary restrictions, and loss of visitation do not trigger

constitutional protections. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("We agree that Madison's 30-day commissary and cell restrictions as punishment are in fact merely changes in the conditions of his confinement and do not implicate due process concerns. They are penalties which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest."). Likewise, a prisoner does not have a protected liberty or property interest in his custodial classification. *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Chapman v. Scott*, 232 F.2d 208 (table), 2000 WL 1272465 *1 (5th Cir. 2000) (citing *Wilson*, 976 F.2d at 958)). Therefore, Smith's due process concerns regarding his disciplinary punishment—commissary and cell restriction as well as his drop in line classification—do not raise constitutional considerations and, thus, do not afford him relief under section 1983.

*B. Violation of TDCJ Rules and Procedures*

In his objections, Smith insists that the crux of his complaint concerns "the violation of my due process [rights] in how the state lied, covered up, and failed to do [their] jobs correctly." Elsewhere in his underlying complaint, Smith maintains that, with respect to his disciplinary proceedings, prison officials lied about whether he desired to attend his hearing, failed to defend him, failed to investigate, and refused to allow him to listen to the tape. Because he asserts that TDCJ officials failed to properly "do their jobs," Smith is essentially arguing that prison officials failed to follow TDCJ's rules, policies, and procedures—thereby violating his due process rights.

However, the failure of TDCJ officials to follow their own regulations and procedures is not sufficient to state a civil rights claim, if constitutional minima are nevertheless met. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute

4

a violation of due process, if constitutional minima are nevertheless met."); *Hernandez v. Estelle*, 788 F.2d 1154 (5th Cir. 1986). In other words, Smith is not constitutionally entitled to have the prison follow its own rules. *Perry v. Allemand*, 687 Fed.App'x 353, 353 (Mem.) (5th Cir. 2017).

With respect to Smith's claims that he was "not allowed" to attend his disciplinary hearing, the Court notes that he does not have an absolute constitutional right to attend the hearing. *See Moody v. Miller*, 864 F.2d 1178, 1180-81 (5th Cir. 1989) ("Thus, that Moody was not present at the hearing does not mean that his due process rights were violated, unless some other requirement of due process—notice, the opportunity to call witnesses, or the opportunity for a hearing itself—was absent.").

Conversely, if the failure to attend the disciplinary hearing is a result of the fault of prison officials, then disciplinary cases heard *in absentia* may violate due process protections. *Id*. at 1180. However, a review of Smith's filed grievances indicate that, when he received his discipline case after the hearing, prison officials remarked that he had refused to attend. The Fifth Circuit has held that when a prisoner refuses to attend a disciplinary hearing, the hearing may be conducted without the prisoner's presence. *Id*. (citing *Ruiz v. Estelle*, 666 F.2d 854, 867-69 (5th Cir. 1982)). However, Smith fails to rebut the contention that he refused to attend; instead, he merely insists, without providing specifics, that prison officials "would not him attend," that "no officer came asking if I wanted to go," and that prison officials are liars. Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 Fed.App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Accordingly, Smith's claims regarding his failure to attend the hearing fail.

Finally, to the extent that Smith argues that he did not receive adequate notice of his disciplinary hearing, which contributed to his failure to attend, this argument likewise fails. In the context of prison disciplinary hearings—when a prisoner's protected liberty interest is at stake—due process requires only that the prisoner receive (1) written notice of the charges at least 24 hours prior to the hearing, (2) an opportunity to call witnesses and present evidence in his defense, and (3) a written statement by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action. *See Graham v. Johnson*, 273 F.3d 392, 2001 WL 1012699 *1 (5th Cir. 2001) (unpublished); *see also Johnson v. Director*, 2007 WL 1257104 *2 (E.D.Tex.–Texarkana Apr. 30, 2007).

Here, first, as articulated above, Smith's protected liberty interests were not at stake through his disciplinary infraction. The punishments he received—cell and commissary restrictions as well as a drop in line or custodial classification—are not protected liberty interests for which section 1983 provides relief. As a result, Smith's liberty interests were not at stake as a result of his disciplinary care and, therefore, any claim about notice fails.

Even with that said, Smith's own words demonstrate that he received notice of his disciplinary charges. In his submitted grievances, he specifically asserted that he "was served a major case—code 4.0—for threatening to inflict harm" on an officer. Smith further stated that he pleaded "not guilty" and signed the case. Accordingly, given the factual details provided about how he was served a major case and pleaded not guilty, Smith fails to show that he did not receive notice.

### C. *False Allegations*

Smith maintains that prison officials provided false accusations and lied about whether he wished to attend his disciplinary hearing. A review of Smith's submitted grievances demonstrate

6

that he explained to prison officials that he, indeed, articulated that "if he did that we're going to have problems" during the underlying incident, but repeatedly insists that he did not intend the statement to be a threat.

However, as an initial matter, Smith readily admits to articulating the statement directed at prison officials for which he received a major disciplinary case. While he notes that he did not intend the statement to be a threat, the Court will not second-guess prison officials' determination that the statement was indeed a threat. *See Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) ("We will not hamper the ability of prison officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration by subjecting the day-to-day judgments of prison officials to intrusive second-guessing.") (internal quotation and citation omitted).

There is no freestanding constitutional right to be free from false charges. *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003); *see also Palmisano v. Bureau of Prisons*, 258 Fed.App'x 646, 648, 2007 WL 4372800 (5th Cir. Dec. 11, 2007) (unpublished) ("Further, his assertion that defendants brought false charges against him does not alone implicate his constitutional rights."). Moreover, the Fifth Circuit has explained that there is no due process violation if a prisoner, who is falsely accused of charges, is given an adequate state procedural remedy for which to challenge the accusations—which includes the submitting of grievances or a disciplinary hearing. *See Collins v. King*, 743 F.2d 248, 254 (5th Cir. 1984) ("If the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded Collins to clear himself of misdeeds which he did not commit sufficed."); *see also Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986), *cert. denied*, 485 U.S. 982 (1988) (explaining that due process is

satisfied, with respect a claim of false charges, when a prisoner is given an opportunity to rebut the charges at a disciplinary hearing).

Having already determined that Smith's disciplinary case did not implicate a protected liberty interest that required due process, his claims regarding lies about attending the hearing and false accusations are without merit, as:

> To extent that [plaintiff] is arguing that defendants violated his right to due process by filing false disciplinary charges against him, he has not demonstrated that the punishments he received, loss of canteen privileges and transfers to different cellblocks, 'impose atypical and significant hardships … in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, he has failed to show that these punishments implicated a liberty interest that required due process.

*Landor v. Lamartiniere*, 515 Fed.App'x 257, 2013 WL 698130 (5th Cir. Feb. 25, 2013) (internal quotation omitted). Accordingly, given that Smith's disciplinary case did not implicate any constitutional concerns, he has not set out a cognizable claim under section 1983 for prison officials' alleged lies and false accusations. These claims are therefore meritless.

### D. Retaliation and Access to Courts

Smith states that after the incident surrounding his hot pot, he "was not allowed to have any type of writing materials, stamps or envelopes" and that prison officials had no right to "take away" his legal materials. In one of his submitted grievances attached to his complaint, Smith alleges that he was punished and retaliated against for threatening to take legal action.

It is well-settled that inmates have the constitutional right to access legal materials, and prison officials may not deny inmates access to courts. *See Clewis v. Hirsch*, 700 Fed.App'x 347, 348 (5th Cir. 2017) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The Supreme Court has stated that the right encompasses no more than the ability of an inmate to prepare and transmit a necessary legal document to the court. *Id*. (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (internal quotations and footnote omitted)); *see also Jones v. Greninger*, 188 F.3d 322, 325

8

(5th Cir. 1999) (explaining that the right "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.").

Furthermore, the Fifth Circuit has held that prison officials are prohibited from retaliating against inmates who exercise their right to access the courts or who complain about prison conditions and official misconduct. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995) ("An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate."). In order to prevail on a claim of retaliation, an inmate must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the inmate for his or her exercise of that right, (3) a retaliatory act, and (4) causation. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Here, Smith's claims regarding access to courts and retaliation fail. First and foremost, there is no indication that Smith was denied the *opportunity* to prepare and transmit a necessary legal document to the court. In fact, given that the docket in this case illustrates that Smith filed his civil rights complaint, multiple motions, several notices to the court, and his objections, he has had the opportunity to file numerous documents with the Court. Second, his claim that prison officials "took away" his legal materials is wholly conclusory: He failed to articulate what legal material, specifically, was removed or under what circumstances. As mentioned above, the Court is not required to accept as true conclusory allegations or legal conclusions. Smith's claim concerning access to courts is without merit.

Similarly, Smith failed to demonstrate any retaliatory conduct. Because he insists that prison officials retaliated against him after the hot pot incident, Smith cannot illustrate that prison
9

officials retaliated against him for the exercise of a constitutional right because there is no constitutional right to threaten an officer.

Moreover, he has failed to identify a specific retaliatory act. To the extent that the purported retaliatory act concerns prison officials falsely accusing him of threatening an officer, as mentioned above, Smith admitted to articulating the threat and, second, he has no constitutional right to be free from false accusations. Additionally, to the extent that the retaliatory conduct stems from the denial of his submitted grievances, Smith likewise has no constitutional right to the satisfactory outcome of his grievances. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Accordingly, Smith's claims concerning access to courts and retaliation are without merit.

### E. Destruction of Property

Smith repeatedly notes that his hot pot was destroyed by prison officials because the official allegedly plugged it inside an outlet without water inside. The Magistrate Judge determined that his property claim fails because there was an adequate post-deprivation remedy. On objection, Smith maintains that the crux of his claim was not solely the destruction of property, but, rather, prison officials' actions after the incident.

The Magistrate Judge correctly found that any destruction of property claim was meritless. Otherwise known as the *Parratt/Hudson* doctrine, the random, unauthorized, and even negligent deprivation of a property or liberty interest **does not** violate procedural due process if the State furnishes an adequate post-deprivation remedy. *See Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (emphasis added); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981). Before the doctrine can be applied, three pre-deprivation conditions must be met: (1) that the deprivation was predictable; (2) that the pre-deprivation process be impossible, making any additional safeguards useless; and (3) that the conduct of the

state actor be unauthorized. When these conditions exist, the State cannot be required to do the impossible by providing a pre-deprivation process. *See Charbonnet v. Lee*, 951 F.2d 638, 642 (5th Cir. 1992); *Myers Klevenhagen*, 97 F.3d 91, 94-95 (5th Cir. 1996).

In other words, the deprivation of property by prison officials—even when negligent or intentional—does not violate the Due Process Clause of the Fourteenth Amendment provided that an adequate state post-deprivation remedy exists. *Hudson*, 468 U.S. at 533; *see also Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) ("The Due Process Clause is not implicated by a state officials negligent act causing unintended loss of property.").

The Texas state judicial system provides an adequate state post-deprivation remedy. *See* Tex. Gov. Code Ann. Art. 501.007 (Vernon Supp. 1994); *see also Murphy Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) ("In *Hudson v. Palmer*, the Supreme Court held that deprivation of property caused by the misconduct of state officials do not infringe constitutional due process provided adequate state post-deprivation remedies exist. In Texas, as in many other states, the tort of conversion fulfills this requirement.").

Here, Smith's underlying complaint surrounds an incident in which his hot pot was destroyed. However, because an adequate state post-deprivation remedy exists, whether prison officials acted negligently or not, the appropriate forum for any property claim lies in state court or the administrative processes of TDCJ-CID rather than federal court. *See Simmons*, 837 F.2d at 1244. Accordingly, because Texas provides an adequate post-deprivation remedy, Smith has not raised a viable constitutional claim with regard to his personal property. As the Magistrate Judge correctly found, this claim is meritless and should be dismissed.

**III. Conclusion**

Smith has failed to demonstrate a constitutional violation that is required in any civil rights lawsuit. The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's objections, (Dkt. #38), are overruled and the Report of the Magistrate Judge is **ADOPTED**. Furthermore, it is

**ORDERED** that the above-styled civil rights lawsuit is **DISMISSED WITH PREJUDICE**. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **26** day of **February, 2018.**

_____
Ron Clark, United States District Judge